UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

CASE NO. 24-1451

DOMECO FUGENSCHUH,
Plaintiff-Appellee,

vs.

BRIAN MINNEHAN AND RYAN STEINKAMP, individually and in their official capacities as a law enforcement officer for the Des Moines, Iowa Police Department;
Defendants-Appellants

Appeal from the United States District Court for the Southern District of Iowa
Case No. 4:20-cv-00227-HCA

APPELLANTS' BRIEF

FOR THE APPELLANTS

**Brent L. Hinders, Eric M. Updegraff**
Hopkins & Huebner, P.C.
2700 Grand Avenue, Suite 111
Des Moines, IA 50312
Telephone: 515-244-0111
Facsimile: 515-244-8935
Email: bhinders@hhlawpc.com

**Stephen R. Eckley**
ECKLEY LAW PLLC
666 Walnut Street, Suite 2308
Des Moines, IA 50309
Telephone: 515-218-1717
Facsimile: 515.218.1555
Email: steve@steveeckleylaw.com

## **Summary of the Case & Request for Oral Argument**

Domeco Fugenschuh filed a multi-count civil action against Des Moines Police Officers Brian Minnehan, Ryan Steinkamp, Chief Dana Wingert, and the City of Des Moines after his traffic stop and arrest. On appeal, the scope is limited to §1983 claims related to Fugenschuh's arrest, the force used, and whether retaliation was present.

The district court made a series of legal errors, wrapped in the cloak of "fact issues" that are not fact issues. As will be explained below, the court flouted the directive to use the lens of the police officer and what he knew at the time, not information learned afterward. In fact, what the officers knew at the time is uncontroverted. Because the court used an improper standard, it reached the wrong legal result.

Oral argument is appropriate in this case due to the public importance related to qualified immunity and district courts misapplying the applicable standards. The Appellants assert that 15 minutes of oral argument per party is sufficient.

i

# Table of Contents

Summary of the Case and Request for Oral Argument ................................. i

Table of Contents .................................................................... ii

Table of Authorities................................................................. iii

Jurisdictional Statement ............................................................. 1

Statement of the Issues.............................................................. 2

Statement of the Case ............................................................... 3

    Facts ........................................................................... 3

    Procedural History .............................................................. 5

Argument Summary................................................................... 7

Argument............................................................................ 8

Conclusion ........................................................................ 18

Certifications ..................................................................... 19

Appellate Case: 24-1451    Page: 3    Date Filed: 05/07/2024 Entry ID: 5391430

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Ames v. City of Tempe, AZ*, 2024 WL 1502267 (9th Cir. Apr. 8, 2024)...................16

*Burnett v. Smith*, 990 N.W. 2d 289 (Iowa 2023) ........................................................7

*Gardner v. Buerger*, 82 F.3d 248, 252 (8th Cir.1996)................................................14

*Haley v. Amazon.com Servs., LLC*, 522 P.3d 80, 90 (2022)......................................17

*Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019)................................................15

*McCoy v. City of Monticello*, 342 F.3d 842, 849 (8th Cir. 2003)..............................13

*Plankas v. Drinsky*, 19 F.3d 1143 (7th Cir. 1994) .....................................................13

*Scott v. Harris*, 550 U.S. 372, 380 (2007)..................................................................15

*Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021) .............................14

*United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981) ......................................11

*Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022) .......................................11

*Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021) ............................................12

**Statute:**

28 U.S.C. § 1331 ............................................................................................................1

28 U.S.C. § 1291 ............................................................................................................1

Iowa Code § 321.311 ................................................................................................ 9-10

Iowa Code § 321.322(1) ......................................................................................... 10, 12

Appellate Case: 24-1451    Page: 4    Date Filed: 05/07/2024 Entry ID: 5391430

# JURISDICTIONAL STATEMENT

The decision appealed: Brian Minnehan and Ryan Steinkamp appeal the district court's February 3, 2024, order partially denying summary judgment against them.

Jurisdiction of the court below: Fugenschuh's complaint claimed that Defendants violated his rights, in part, under the United States Constitution. The district court had original jurisdiction of his claims under 28 U.S.C. section 1331.

Jurisdiction of this court: This is an appeal from the entry of partial judgment on the Defendants-Appellants' cross-motion for summary judgment. The district court denied qualified immunity to the two officers. This Court has jurisdiction under 28 U.S.C. section 1291.

Timeliness of appeal: Minnehan and Steinkamp filed a timely notice of appeal on March 4, 2024.

1

# STATEMENT OF THE ISSUES

I.    The District Court made a legal error in denying qualified immunity at summary judgment related to the stop of Domeco Fugenschuh for failing to yield the right-of-way.

     *Gardner v. Buerger,* 82 F.3d 248, 252 (8th Cir.1996).

     *Scott v. Harris*, 550 U.S. 372, 380 (2007).

     *Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022).

     *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021).

II.    The District Court made a legal error in denying qualified immunity to Ryan Steinkamp related to the force he used.

     *Haley v. Amazon.com Servs., LLC*, 522 P.3d 80, 90 (2022).

     *McCoy v. City of Monticello*, 342 F.3d 842, 849 (8th Cir. 2003).

     *Plankas v. Drinsky*, 19 F.3d 1143 (7th Cir. 1994).

     *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

Appellate Case: 24-1451   Page: 6   Date Filed: 05/07/2024 Entry ID: 5391430

## STATEMENT OF THE CASE

**Facts**

On July 6, 2018, Officers Minnehan and Steinkamp were sitting in a parking lot off Martin Luther King Jr. Parkway observing traffic, which was a common practice. [App. 65-66 R. Doc. 44-2 at 39-40]. When Mr. Fugenschuh drove by, he observed the police car, sharply turned his head, stared at them, and appeared to be nervous about their presence. [App. 66 R. Doc. 44-2 at 40]. The officers pulled behind Fugenschuh and followed him from Martin Luther King Jr. Parkway and Hickman to 30th Street and Hickman, approximately 11 blocks, where the officers perceived a traffic violation. [App. 66, 361 at 1:01 R. Doc. 44-2 at 40, 47-2 at 555]. While they followed Fugenschuh, they observed him acting erratically by flipping them off for several blocks. [App. 66 R. Doc. 44-2 at 40]. Fugenschuh turned north on 30th Street after stopping at a red light. [App. 66 R. Doc. 44-2 at 40]. When he did so, the officers observed that a car coming from the south had to brake in order to avoid collision with Fugenschuh's vehicle. [App. 70-71 R. Doc. 47-2 at 47-48]. Their perception of this is corroborated by the body camera video of Steinkamp saying, "Did you see he cut them off?" [App. 169, 361 at 01:01 R. Doc. 47-2 at 154, 555]. Minnehan replied, "They had to hit their brakes." [App. 169, 361 at 01:02 R. Doc. 47-2 at 154, 555]. At approximately 10:30 P.M., Officers Steinkamp and Minnehan stopped Plaintiff, as they believed that he had committed a moving

3

violation by "cutting off" the other northbound vehicle. [App. 259, 361 at 1:20 R. Doc. 47-2 at 244, 555].

Officer Steinkamp approached Fugenschuh's window and stated, "What's up man?" and asked Fugenschuh to step out of the car. [App. 361 at 01:37 R. Doc. 47-2 at 555]. Fugenschuh replied, "Fair enough." [App. 361 at 01:42 R. Doc. 47-2 at 555]. When Fugenschuh stepped out, Steinkamp placed him in handcuffs. [App. 361 at 01:50 R. Doc. 47-2 at 555]. Steinkamp then advised Fugenschuh of the reason for the stop, which was cutting off the northbound vehicle, because that vehicle had to brake due to Fugenschuh pulling in front of them. [App. 361 at 02:08 R. Doc. 47-2 at 555]. As the officers asked about the whereabouts of Plaintiff's wallet in order to check his driver's license, Fugenschuh began reacting physically, as Officer Steinkamp can be heard responding, "what's your deal?" and "you are acting extremely off". [App. 361 at 02:42 R. Doc. 47-2 at 555]. At this point, Fugenschuh's arms were behind him while he was leaned over the hood of the police vehicle, when the officers took his wallet and searched him for weapons. [App. 361 at 02:47 R. Doc. 47-2 at 555]. Fugenschuh voiced no complaints of pain or discomfort during this portion of the stop; he was speaking clearly without any signs of discomfort. [App. 361 at 02:24-03:13 R. Doc. 47-2 at 555].

Fugenschuh's irrational behavior escalated after this; he even agreed by deposition, that he was not acting reasonably during this portion of the stop. [App.

262 R. Doc. 47-2 at 247]. When Officer Minnehan twice asked if his car was insured, Fugenschuh responded with "your momma, bitch" and "suck my dick, dickhead" while refusing to answer the question [App. 361 at 03:06-03:15 R. Doc. 47-2 at 555]. When Fugenschuh was told he was going to jail and Steinkamp led him to the back of the patrol car, Fugenschuh can be seen struggling, leaning back toward Steinkamp, then he made a turn and forward movement toward Officer Minnehan, who told him to "have a seat" in the vehicle while Plaintiff continued to direct obscenities at Minnehan, such as, "I fucked your mom." [App. 361 at 03:18 R. Doc. 47-2 at 555]. After Plaintiff made the sudden turn toward Minnehan, saying to the officer "I fucked your mom," Officer Steinkamp pushed Fugenschuh into the back of the patrol car. [App. 361 at 03:21 R. Doc. 47-2 at 555]. Fugenschuh made noises of temporary discomfort after being shoved, but did not seek any medical treatment, and he sustained only short-term temporary discomfort from the push into the car.[1] [App. 268 R. Doc. 47-2 at 253]. Upon search of his vehicle, the officers found marijuana "shake", which is small bits of marijuana debris, in the vehicle. [App. 363 at 04:25 R. Doc. 47-2 at 557].

**Procedural History**

Fugenschuh asserted the following claims in his complaint:

---

[1] Fugenschuh claimed sore wrist from the handcuffs but the soreness and "indents" from the cuffs resolved within a day. [App. 268 R. Doc. 47-2 253].

COUNT 1 Unreasonable seizure under 42 U.S.C § 1983 4th Amendment to the United States Constitution against Steinkamp and Minnehan.

COUNT 2 Unreasonable seizure under Article I, § 8 of the Iowa Constitution against Steinkamp and Minnehan.

COUNT 3 Excessive force under 42 U.S.C § 1983 4th Amendment to the United States Constitution against Steinkamp.

COUNT 4 Excessive force under Article I, § 8 of the Iowa Constitution against Steinkamp.

COUNT 5 Retaliation under 42 U.S.C § 1983 1st Amendment to the United States Constitution against Steinkamp and Minnehan.

COUNT 6 Retaliation under Article I, § 7 of the Iowa Constitution against Steinkamp and Minnehan

COUNT 7 Racially biased policing under 42 U.S.C § 1983 14th amendment to the United States Constitution against Steinkamp and Minnehan.

COUNT 8 Racially biased policing under Article I §§ 1 and 6 of the Iowa Constitution against Steinkamp and Minnehan.

COUNT 9 Conspiracy under 42 U.S.C §§ 1983 and 1985 4th, 5th & 14th Amendment to the United States Constitution against Steinkamp and Minnehan.

COUNT 10 Conspiracy under Article I §§ 1 and 6 of the Iowa Constitution against Steinkamp and Minnehan.

COUNT 11 Deliberately indifferent policy, procedure, etc. under 42 U.S.C § 1983 1st, 4th, 5th & 14th Amendments to the United States Constitution against Chief Dana Wingert and City of Des Moines, Iowa.

COUNT 12 Deliberately indifferent policy, procedure, etc. under Article I §§ 1, 6 and 8 of the Iowa Constitution against Chief Dana Wingert and City of Des Moines, Iowa.

COUNT 13 Assault and battery against Steinkamp.

6

At summary judgment, Fugenschuh did not resist dismissal of Counts 7, 8, 9, 10, 11, or 12. Fugenschuh also did not resist dismissal of Counts 5 and 6, to the extent they were based on retaliatory marijuana arrest; he did resist as to the traffic stop and the force used. Fugenschuh filed a voluntary dismissal of Counts 2, 4, and 6 based on the Iowa Supreme Court's declaration that there was no longer a direct cause of action for damages under the Iowa Constitution. *Burnett v. Smith*, 990 N.W. 2d 289 (Iowa 2023). That left cross-motions on:

COUNT 1 Unreasonable seizure under 42 U.S.C § 1983 4th Amendment to the United States Constitution against Steinkamp and Minnehan.

COUNT 3 Excessive force under 42 U.S.C § 1983 4th Amendment to the United States Constitution against Steinkamp.

COUNT 5 Retaliation under 42 U.S.C § 1983 1st Amendment to the United States Constitution against Steinkamp and Minnehan—as to the stop and the force.

COUNT 13 Assault and battery against Steinkamp.

The district court misapplied the law when it denied summary judgment to Minnehan and Steinkamp.

## ARGUMENT SUMMARY

There are no genuine disputed factual issues in this case, and the district court, by misapplying the law, wrongfully ruled against Minnehan and Steinkamp. Nearly all of the events are recorded and the officers' testimony about their perceptions is uncontroverted. Based on the undisputed record, the officers had sufficient legal cause to stop Fugenschuh's vehicle for a traffic violation. The

7

presence of sufficient reasonable suspicion or probable cause thwarts all of Fugenschuh's arguments related to the stop, and by extension the retaliation claim related to the stop, and there is no clearly established law to be free from seizure because the car you cut off has a very responsive driver who was able to avoid the collision risk caused by Fugenschuh. Further, Steinkamp used de minimus force against Fugenschuh, causing only short-term temporary discomfort, thus the claims related to force, including retaliation, fail.

## ARGUMENT

## I. The District Court committed legal error in denying qualified immunity at summary judgment related to the stop of Domeco Fugenschuh for failing to yield the right-of-way.

The following chart are the reasons the district court found disputed, material facts. The problem with this reasoning is, no one disputes the following facts, which is why the court committed an error of law. Otherwise stated, the district court cited several undisputed facts and then characterized the legal question of qualified immunity as a fact question. That is one underlying flaw that flows throughout, but there are additional legal errors the court made, including using amended charges as a "fact dispute", when amending charges is generally not indicative of an unlawful arrest, weighing evidence, and failing to use the officer-point-of-view standard.

8

| In favor of Fugenschuh | In favor of Minnehan and Steinkamp |
|---|---|
| Officers admitted Fugenschuh was not in the intersection when the following vehicle braked. | |
| To violate the statute, officers would have to reasonably believe there was an immediate hazard. | |
| Officers testified there was no risk of collision because the following driver braked and avoided the hazard. | City expert found that, had the following driver, but for braking, would have collided with Fugenschuh in approximately 1.29 seconds. |
| Iowa District Court found, after careful review of the video, no immediate hazard. | The officers had the opportunity to see things in real time, not through the "luxury" of the district court being able to deliberatively watch video. |
| There was an amended charge, correcting the citation to meet the facts. | |

a. <u>The district court wrongly considered a change in charge in finding a fact dispute</u>.

The district court erroneously accepted Fugenschuh's assertion that, because there was an amended charge changing what Fugenschuh was originally cited with, there was evidence of a "fact" dispute about the basis for the stop. It should without saying, that is not a fact issue. It happened. There was an original charge and then an amended charge. Originally, the officers charged Fugenschuh under Iowa Code § 321.311, which states:

1. The driver of a vehicle intending to turn at an intersection shall do so as follows:

a. Both the approach for a right turn and right turn shall be made as close as practical to the right-hand curb or edge of the roadway.

9

b. Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to depart from the intersection to the right of the center line of the roadway being entered.

c. Approach for a left turn from a two-way street into a one-way street shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection. A left turn from a one-way street into two-way street shall be made by passing to the right of the center line of the street being entered upon leaving the intersection.

However, it is clear from all undisputed evidence that the officers pulled Fugenschuh over for "cutting off" a driver, meaning the driver had to brake due to Fugenschuh pulling in front of them. Hence, the County Attorney amended the charge to Iowa Code § 321.322(1) which states:

The driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at the first opportunity at either the clearly marked stop line or before entering the crosswalk or before entering the intersection or at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. Before proceeding, the driver shall yield the right-of-way to any vehicle on the intersecting roadway which has entered the intersection or which is approaching so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection.

It is undisputed that the officers saw the car following Fugenschuh, after his turn in front of it, braked. The officers believed that amounted to a hazard. The officers stated that the two cars were not, both, in the intersection at the same time, but that is not what the law requires. The immediate hazard must only occur when

10

the following driver is in the intersection, not both cars at once. The officers

testified that the following car had to slow in the intersection, based on

Fugenschuh's turn—which can be seen on video. The driver had to brake and the

officers believed that, but-for the following car braking, an imminent hazard was

present and the only reason it was avoided, was because the following driver was

attentive and braked.

Perhaps that was an error of fact, though it is hard to imagine that if a

following person is driving through an intersection and a car corners in front of

them and they collide, that would not be a hazard. The suggestion is that a

violation of this law depends on the actions of the following driver. Nevertheless,

mistaken or not about when a vehicle was a hazard, the officers should not be

given a negative inference in responding to summary judgment because of a

charging error that was amended to meet the facts of the infraction.

"[T]he validity of the arrest should be judged by whether the arresting

officers actually had probable cause for the arrest, rather than by whether the

officers gave the arrested person the right reason for the arrest." (alteration in

original) (quoting *United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981)).

Probable cause for *any* offense is sufficient to invoke qualified immunity. *Webster

v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022) ("[Q]ualified immunity may apply

if there was probable cause or arguable probable cause to arrest [someone] for any

11

crime at the time of the arrest."). "[An arresting officer's] subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021). In essence, it doesn't matter that Fugenschuh was initially charged under one statute and then it was amended because there was probable cause to charge him under another statute.

The fact that there was a charging error that was corrected by the County Attorney should not even factor into the qualified immunity analysis. Yet, in this case, it was one of the reasons the district court found there was a "fact dispute". The court stated, "While most of the underlying facts are undisputed, there is adequate evidence in the record from which a reasonable jury could find in favor of Fugenschuh or in favor of Minnehan and Steinkamp." Then goes on to give examples of undisputed facts Fugenschuh raises, including, "Fugenschuh also relies on the fact that the state prosecutor amended the charge at trial to a violation of Iowa Code §321.322(1)." Then, the court moved directly into qualified immunity analysis, apparently accepting that change in charge as material. The district court never acknowledged that an amended charge is irrelevant to qualified immunity. The question should be whether there was probable cause to pull Mr. Fugenschuh over for *any* violation, not the initial citation. Yet, the court used the different charges as a sword against the officers in qualified immunity analysis, and

Appellate Case: 24-1451    Page: 16    Date Filed: 05/07/2024 Entry ID: 5391430

couched it as a fact question, even though no one disputes the existence of two different charges.

No party disputes the fact that charges were amended. What was in dispute was the legal significance of an amendment to the charge. Existing case law shows that such amendments are not legally significant. As there was no fact dispute and this matter is not legally significant, it should not have prevented summary judgment in favor of the officers. That is legal error and the district court's summary judgment order as to the arrest should be reversed.

b. The district court misapplied the summary judgment standards in qualified immunity analysis by abandoning the officers' points of view and weighing evidence against the officers.

An interpretation of the record that "is gleaned from 20/20 hindsight as opposed to judging the circumstances from the perspective of a reasonable officer following customary police practices" is legal error. *McCoy v. City of Monticello*, 342 F.3d 842, 849 (8th Cir. 2003). The district court committed such error here.

"We do not return to the prior segments of the event and, in light of hindsight, reconsider whether the prior police decisions were correct. Reconsideration will nearly always reveal something different could have been done if the officers knew the future before it occurred." *Plankas v. Drinsky*, 19 F.3d 1143 (7th Cir. 1994). For reasonableness analysis, we are instructed to "scrutinize only the seizure itself, not the events leading to the seizure" and not

13

information learned after. *Gardner v. Buerger,* 82 F.3d 248, 252 (8th Cir.1996).

"The legal reasonableness of a police officer's [actions] for purposes of the Fourth Amendment and qualified immunity—is not evaluated with the benefit of hindsight. Rather, our focus is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

Yet, the district court here used a judge's review of the video and lay opinion about it as a comparator of the reasonableness of the officers' stop. The court even acknowledged that this was a "luxury" not afforded to the officers, but still used it in analyzing qualified immunity. That is legal error that calls for the court's decision on the arrest to be overturned.

This position is interrelated with the issue of utilizing video and weighing evidence. When a court looks at a video and compares it to the version of events told by a party, there is a limitation on how that video should be used or construed against the non-moving party. It is important to repeat at this point, this was a cross-motion for summary judgment, so the City is entitled to this partiality, as well. The court in this case looked at the video, relied on the state district court's armchair analysis of the video, and created a fact question. This is an unlawful weighing of the evidence.

14

At summary judgment, a video should only be weighed more heavily than a party's version of events, if it "so utterly discredit[s]" that party's account of events, that a jury could not believe it. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

> As we have clarified, *Scott* is the exception, not the rule. It does not "abrogate the proper summary judgment analysis, which in qualified immunity cases 'usually means adopting ... the plaintiff's version of the facts.' " *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott*, 550 U.S. at 378, 127 S.Ct. 1769). That standard continues to apply in the face of "documentary evidence" that lends support to a government official's account of events, *id.*, or even makes it "unlikely" that the plaintiff's account is true, *United States v. Hughes*, 606 F.3d 311, 319–20 (6th Cir. 2010) (holding that *Scott* does not apply to photographs rendering plaintiff's account "unlikely"). Summary judgment is proper under *Scott* only when there is evidence – like the videotape in *Scott* itself – of undisputed authenticity **that shows some material element of the plaintiff's account to be "blatantly and demonstrably false."** *Blaylock v. City of Phila.*, 504 F.3d 405, 414 (3d Cir. 2007) (refusing to extend *Scott* to evidence in form of police photographs that fail to depict "all of the defendant's conduct and all of the necessary context"); *see also Witt*, 633 F.3d at 277 (holding *Scott* inapplicable to soundless video that does not capture key disputed facts).

*Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) [emphasis added]. We do not have that here. The video in question, the car camera, indeed shows the vehicle slowing in front of the patrol car. Even if it didn't, the absence of that information on video would not mean that the officers' accounts are blatantly and demonstrably false.

In its role as the nonmoving party, the City should not have to sacrifice the inferences in its favor because a judge had the "luxury" of viewing this video from

an office. Perhaps, if it showed that the officers' accounts could not be believed by any jury, it would have value for the Plaintiff. It doesn't. At best, it corroborates their statements; at worst, it brings nothing contradictory.

A recent case from the 9th Circuit is particularly instructive. *Ames v. City of Tempe, AZ*, 2024 WL 1502267 (9th Cir. Apr. 8, 2024). On appeal after the district court granted summary judgment to the officers, Ames argued that, unless the bodycam footage conclusively corroborated the officers' testimony, the district court could and should discredit the officers' statements at summary judgment.

> That is incorrect. The question before the district court at summary judgment was not whether the bodycam footage corroborated the officers' testimony, but whether the bodycam footage contradicted the officer's testimony such that there was a genuine dispute of material fact. *See Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) ("This court does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."). The district court correctly concluded that because the bodycam footage did not contradict the officers' testimony that Ames resisted the officers' initial attempt to detain him, kicked Officer Payne, and grabbed Officer Conklin's gun, there was no genuine dispute of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)

It is when there is neutral, untainted video evidence that demonstrates that a party's testimony could not possibly be accurate, that results in no genuine dispute of fact.

> The *Scott* exception applies when (1) the moving party and the nonmovant submit declarations or deposition testimony that directly contradict one another as to a material fact, *and* (2) the moving party

16

also submits neutral, unimpeachable, irrefutable, and unrebuttable evidence that clearly demonstrates the truth of that set forth in the moving party's evidentiary submission. Only then may the nonmovant be denied the benefit of the summary judgment standard—to have its tendered evidence viewed as true and be given the benefit of all inferences arising therefrom.

*Haley v. Amazon.com Servs., LLC*, 522 P.3d 80, 90 (2022).

Because the district court viewed the video as contradictory evidence—based on the viewing of a judge in the "luxury" of an office as a material dispute of fact, the district court committed legal error and the decision on summary judgment as to the seizure of Mr. Fugenschuh should be overturned.

## II. The District Court made a legal error in denying qualified immunity to Ryan Steinkamp related to the force he used.

Again, this is an issue of weighing evidence and giving weight to the body camera video when it doesn't contradict the officers' testimony. This is a situation in which the video supports the officers' version of events, so it should not be used as a sword against the officers. Further, we again move away from the officers' point of view. It doesn't matter that Mr. Fugenschuh baldly states he wasn't resisting.

From the officers' points of view, he reached for his pocket while handcuffed and he pulled away while walking toward the back of the patrol vehicle. He was not cooperative. He was taunting. His walk was stilted. The video does not contradict any of these facts. For all the reasons stated above, the court

made a legal error by giving weight to the video and failing to use the officer's view as the lens. The correct result should be a finding in favor of Officer Steinkamp on the force he used, and as follows, regarding retaliation.

## **CONCLUSION**

The district court's legal errors require this Court to overturn the summary judgment order that denied qualified immunity to both officers. Officer Steinkamp respectfully requests this Court rule summary judgment in his favor.

Respectfully submitted,

FOR THE APPELLANTS

HOPKINS & HUEBNER, P.C.

By */s/ Brent L. Hinders*
Brent L. Hinders, AT0003519

By */s/ Eric M. Updegraff*
Eric M. Updegraff, AT 0008025
2700 Grand Avenue, Suite 111
Des Moines, IA 50312
Telephone: 515-244-0111
Facsimile: 515-244-8935
bhinders@hhlawpc.com
ATTORNEYS FOR APPELLANT RYAN STEINKAMP

By */s/Stephen R. Eckley*
Stephen R. Eckley, AT0002250
ECKLEY LAW PLLC
666 Walnut Street, Suite 2308
Des Moines, IA 50309
Telephone: 515-218-1717
Facsimile: 515.218.1555
ATTORNEY FOR APPELLANT BRIAN MINNEHAN

18

## **CERTIFICATIONS**

Filing and Service. I certify that on April 24, 2024, I filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by placing 10 copies in the U.S. Mail to:

Eighth Circuit Court of Appeals
Thomas Eagleton Courthouse
111 South 10th Street
St. Louis, MO

I further certify that a paper copy was sent to counsel of record to:

Gina Messamer
Parrish Kruidenier
2910 Grand Avenue
Des Moines, IA 50312

/s/ Akosua Wiafe
Akosua Wiafe

Compliance. The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,227 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/Akosua Wiafe
Akosua Wiafe

Scanned. The undersigned certifies that the brief and addendum have been scanned for viruses and that the brief and addendum are virus-free.

/s/ Akosua Wiafe
Akosua Wiafe